# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER J. DEAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY & COUNTY OF SAN FRANSISCO,<br><br>　　　　　Defendant.<br>_____/ | Case No. 1:23-cv-00542-KES-SKO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE**<br><br>(Doc. 16) |

On July 14, 2023, Defendant City and County of San Francisco ("Defendant") filed a motion to transfer this action to the Northern District of California under 28 U.S.C. § 1404(a). (Doc. 16). Plaintiff Peter J. Dean ("Plaintiff") opposes. (Doc. 19). This matter has been referred to the undersigned pursuant to 8 U.S.C. § 636(b)(1)(A), (*see* Doc. 30).[1]

For the following reasons, the Court will grant Defendant's motion to transfer this action to the Northern District of California.

## I.　　BACKGROUND

Plaintiff is a resident of California. (*See* Doc. 1 ("Compl.") ¶ 1). Defendant is an incorporated City of the State of California and public employer operating as the City and County of San Francisco. (*Id.* ¶ 3). Plaintiff was an employee of Defendant until he was terminated on

---

[1] "Because an order transferring venue pursuant to 28 U.S.C. § 1404(a) does not address the merits of the case, it is a nondispositive matter that is within the province of a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A)." *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1241 n.1 (S.D. Cal. 2013). *See also Cantley*, 2016 WL 4191889, at *6 n.1.

1  December 7, 2021, for failure to comply with Defendant's COVID-19 vaccine mandate. (Compl.
2  ¶ 19).

3　　　　　Plaintiff brings claims related for religious discrimination, based on theories of failure to accommodate, disparate treatment, and retaliation, under 42 U.S.C. § 2000e, (*id.* ¶¶ 26–42 (failure to accommodate), *id.* ¶¶ 43–54 (disparate treatment), *id.* ¶¶ 55–63 (retaliation)), and failure to engage in interactive process, failure to accommodate, and retaliation, under the California Fair Employment and Housing Act, *see* Cal. Gov. Code §§ 12900 *et seq.*, 12940(l), 12940(h)); (*id.* ¶¶ 64–69 (failure to engage in interactive process); *id.* ¶¶ 70–81 (failure to accommodate); *id.* ¶¶ 82–89 (retaliation)). Plaintiff also alleges various disability discrimination claims, including discrimination based on perceived disability under both the Americans with Disabilities Act, 42 U.S.C. § 12201, *et seq.*; (*id.* ¶¶ 90–101); and the California Fair Employment and Housing Act, (Cal. Gov. Code § 12900, *et seq.*; *id.* ¶¶ 102–14).

　　　　　Defendant now moves to transfer this action to the United States District Court for Northern District of California under 28 U.S.C. § 1404(a), where they note that several consolidated, earlier-filed cases—including a class action—are pending. Those cases are as follows:

1. The "*Keene*" Action (4:22-cv-01587 (N.D. Cal.)): On March 14, 2022, the *Keene* Action was filed against the Defendant. London Breed (the Mayor of San Francisco) and Carol Isen (the City's Director of Human Resources) were also sued in their individual capacities. (*See* Doc. 16-1 ("Shapiro Decl.") ¶ 5). The Northern District granted a motion to dismiss these individuals, and the City is the only remaining defendant. (*See* Shapiro Decl. ¶ 5). The three plaintiffs, Selina Keene, Melody Fountila, and Mark McClure, allege that they were employees of the City, that they were opposed to taking the COVID-19 vaccine due to their religious beliefs, and that they were denied an accommodation to the "vaccine mandate" imposed by the City. (*See* Doc. 16-5 ("Ex. D") ¶¶ 8, 9, 10). The *Keene* plaintiffs assert causes of action for (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and (2) failure to provide religious accommodation in violation of the

California Fair Employment and Housing Act (Cal. Govt. Code § 12900, *et seq.*) ("FEHA") (Ex. D ¶¶ 25–44). The plaintiffs in the *Keene* Action seek compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. D).

2. The "*Gozum*" Action (4:22-cv-03975 (N.D. Cal.)): The *Gozum* Action was originally filed in San Francisco Superior Court on April 22, 2022. (*See* Shapiro Decl. ¶ 6). On May 26, 2022, the plaintiff filed a First Amended Complaint adding a cause of action for religious discrimination under Title VII, and the City subsequently removed the *Gozum* Action to the Northern District on July 6, 2022. (*See id.*) The plaintiff, David Gozum, alleges that he sought a religious exemption from the City's COVID-19 "vaccine mandate" based on his religious beliefs, which was denied. (*See* Doc. 16-6 ("Ex. E") ¶¶ 8, 11, 17). Plaintiff further alleges that he was dismissed from employment due to his refusal to receive the vaccine. (Ex. E ¶¶ 13, 19, 20). Plaintiff Gozum brings two causes of action: (1) failure to provide religious accommodation in violation of FEHA and (2) violation of Title VII. (*See id.* ¶¶ 14–24.) Plaintiff seeks compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. E).

3. The "*Guardado*" Action (4:22-cv-04319 (N.D. Cal.)): The *Guardado* Action, a putative class action, was filed July 26, 2022. (Shapiro Decl. ¶ 7). The seven named plaintiffs allege, on behalf of themselves and the putative class, that their personal religious beliefs prevented them from receiving the COVID-19 vaccine, that they requested an exemption from Defendant's COVID-19 Vaccination Policy, and that they suffered adverse employment actions due to their failure to receive the COVID-19 vaccination. (*See* Doc. 16-7 ("Ex. F") ¶¶ 5–11). The plaintiffs assert claims for (1) failure to provide religious accommodation in violation of Title VII, (2) violation of the "religious clauses" of the First Amendment to the U.S. Constitution, and (3) failure to provide religious accommodation in violation of FEHA. (*See* Ex. F ¶¶ 57–80). The putative class in the *Guardado* Action is defined as: "All employees presently or previously employed by San Francisco (1) who have been ordered to submit to a COVID-19 vaccination, (2) who have submitted a written request for a religious

accommodation, and (3) whose requests were denied due to a finding of a lack of religious sincerity and/or due to the claim that granting a religious accommodation would pose an undue hardship on San Francisco." (Ex. F ¶ 14). This class definition accordingly contemplates encompassing all of the named plaintiffs in each of the Related Vaccine Actions asserting religious exemption-based claims, as well the Plaintiff in the instant action. The plaintiffs in the *Guardado* Action seek compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. F.)

4. The "*Shaheed*" Action (4:22-cv-06013 (N.D. Cal.)): The *Shaheed* Action was filed on October 12, 2022. (*See* Shapiro Decl. ¶ 8). The three plaintiffs are represented by the same counsel as the plaintiffs in the *Guardado* action and assert substantially similar claims as the plaintiffs in *Guardado*, though *Shaheed* is not a putative class action. (*Compare* Doc. 16-8 ("Ex. G"), *with* Ex. F). The plaintiffs in the *Shaheed* Action seek compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. G).

5. The "*Debrunner*" Action (4:22-cv-07455 (N.D. Cal.)): The *Debrunner* Action was filed on November 23, 2022. (Shapiro Decl. ¶ 9). The plaintiffs include 135 current and former City employees challenging the City's COVID-19 Vaccination Policy on religious and medical grounds, and they assert claims for, among other things: (1) failure to provide a religious accommodation in violation of Title VII, (2) failure to provide religious accommodation in violation of FEHA, (3) violation of the "religious clause" of the First Amendment to the U.S. Constitution, and (4) disability-related claims under the Americans with Disabilities Act ("ADA") and FEHA. (*See* Doc. 16-9 ("Ex. H") ¶¶ 291–504). The plaintiffs in the *Debrunner* Action seek compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. H)

6. The "*Cook*" Action (4:22-cv-07645 (N.D. Cal.)): On December 5, 2022, Joseph Cook, a former employee of the City, brought an action challenging the City's COVID-19 Vaccination Policy on religious grounds, and claimed he was unlawfully terminated for not complying with the City's COVID-19 Vaccination Policy. Plaintiff Cook asserts claims for, among other things: (1) failure to provide religious accommodation

4

|   |   |
|---|---|
| 1 | in violation of Title VII, and (2) failure to provide religious accommodation in |
| 2 | violation of FEHA. (*See* Shapiro Decl. ¶ 10; Doc-16-10 ("Ex. I") ¶¶ 31–35, 40–43). |
| 3 | The plaintiff in the Cook Action seeks compensatory damages and injunctive relief, |
| 4 | among other forms of relief. (*See* Ex. I). |

7. The "*Monegas*" Action (4:22-cv-04633 (N.D. Cal.)):  On August 10, 2022, April Monegas, a former employee of the City, filed suit *pro se* alleging she was terminated for failure to comply with the City's COVID-19 Vaccination Policy. (*See* Shapiro Decl. ¶ 11). Like certain of the plaintiffs in the *Debrunner* Action, Monegas asserts claims under the ADA, and like the Plaintiffs in *Debrunner*, *Guardado*, *Gozum*, and *Keene*, Monegas seeks injunctive relief related to the City's COVID-19 Vaccination Policy. (*See* Doc. 16-11 ("Ex. J") ¶¶ 49–75). The plaintiff in the *Monegas* Action seeks compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. J).

8. The "*Sanders*" Action (4:23-cv-00211 (N.D. Cal.)):  On January 17, 2023, Charlotte Sanders, a former City employee, filed suit alleging she was terminated for failure to comply with Defendant's COVID-19 Vaccination Policy. (*See* Shapiro Decl. ¶ 12). Plaintiff Sanders alleges that her religion prohibited her from receiving the COVID-19 vaccination, and that she was unlawfully denied an exemption from the COVID-19 Vaccination Policy by Defendant. Plaintiff Sanders asserts claims for: (1) Violation of the First Amendment's Free Exercise Clause and (2) violation of Title VII (Shapiro Doc. 16-12 ("Ex. K") ¶¶ 51–80). Plaintiff Sanders seeks compensatory damages and injunctive relief, among other forms of relief. (*See* Ex. K).

Since Defendant's original motion was filed, seventeen other similar cases have been filed in the Northern District including:

9. The "*Royce*" Action (4:23-cv-03643 (N.D. Cal.)):  On July 24, 2023, Michael Royce, an employee with the City, filed suit against the City of San Francisco related to alleged discrimination based on failure to comply with Defendant's COVID-19 Vaccination Policy. (*See generally* Doc 20-1). Plaintiff Royce asserts claims for, among other things religious discrimination and retaliation in violation of Title VII and violations

5

of the California Fair Employment and Housing Act. (*See id.* ¶¶ 26–89). Plaintiff in the present action represents Plaintiff Royce as retained counsel. (*See id.* at 20). A total of twenty-five actions have been consolidated by the Northern District. (*See* Doc. 16-18 "Ex. Q" (4:22-cv-01587-JSW (Doc. 90))).

## II.     LEGAL STANDARD

Section 1404(a) of Title 28 of the United States Code provides that even when venue is proper, the court has discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this section is to "prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 26–27 (1960)). The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

To support a motion to transfer under section 1404(a), the moving party must first show the proposed transferee court possesses subject matter jurisdiction over the action, the parties would be subject to personal jurisdiction in the transferee court, and venue would have been proper in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). Once this threshold requirement has been established, the Court next looks at whether the convenience of parties and witnesses, and the interests of justice favor transfer. 28 U.S.C. § 1404(a). In the Ninth Circuit, courts weigh several considerations when determining whether transfer is appropriate: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and availability of compulsory process; (4) ease of access to the evidence; (5) feasibility of consolidation of other claims; (6) familiarity of each forum with the applicable law; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.

*Decker Coal*, 805 F.2d at 843; *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000), *cert. denied*, 531 U.S. 928 (2000).

### III.     DISCUSSION

Plaintiff does not contest whether this action could have initially been brought in the Northern District, nor is there a dispute over subject matter jurisdiction, whether the parties would be subject to personal jurisdiction in the transferee court, or whether venue would have been proper there. Thus, Defendant readily satisfies the threshold requirement of showing that the action could have been originally brought in the Northern District. *See Hoffman*, 363 U.S. at 344; *A.J. Indus.*, 503 F.2d at 386.

In analyzing the second prong of a transfer under section 1404, the Court may consider several factors to determine whether the convenience and interest of justice elements of section 1404(a) are met by the proposed transfer: (1) convenience to the parties and witnesses; (2) relative ease of access to evidence; (3) availability of compulsory process for attendance of unwilling witnesses; (4) plaintiff's choice of forum; and (5) administrative considerations. *See Decker Coal Co.*, 805 F.2d at 843; *E. & J. Gallo Winery v. F. & P. S.P.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994). The factors are each sub-categories of the three general factors listed in the text of section 1404(a) itself: the convenience of parties, the convenience of witnesses, and the interest of justice. The Court is to interpret these factors broadly, and to apply them to the particular facts of each individual case. *See e.g.*, *id.* at 466. And "[t]he question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, No. C07–04296 MJJ, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (quotation marks omitted); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. CIV 09–1442 WBS EFB, 2009 WL 1992356, at *6 (E.D. Cal. July 8, 2009).

There are a large number of factors that courts have considered in weighing the propriety of a section 1404(a) transfer, not all of which are particularly relevant here. Rather than discussing all possible influences on the Court's decision, the Court will focus only on the factors that are of significance in this case—in particular, the interests of justice and Plaintiff's choice of forum.

Defendants contend that the transfer should be granted in the interest of justice, to avoid inconsistent rulings, and for judicial efficiency. (Doc. 16 at 6–11). Plaintiff contends that a change of venue would cause hardship. (Doc. 19 at 2–3). Plaintiff also contends that to make a finding that transfer is in the interests of justice, the Court would need to make a finding that there would be no conflict or prejudice caused by the transfer related to Plaintiff's representation in a related case being heard in the Northern District. (*Id.* at 3). The Court addresses these issues below.

Plaintiff asserts that transfer to the Northern District would be a hardship. (Doc. 19 at 2–3). This is belied by the fact that Plaintiff currently represents a separate Plaintiff in a similar action currently consolidated with the other twenty-four cases before the Northern District. *Cf. Siddiqi v. Gerber Prods. Co.*, No. CV 12-1188 PA RZX, 2012 WL 11922412, at *2 (C.D. Cal. Mar. 26, 2012).

While Plaintiff's choice of forum favors this Court over the Northern District, ultimately administrative considerations and the interest of justice dictate that this action should be transferred to the Northern District. While it is true that a Plaintiff's choice of forum is to be given considerable weight, there are circumstances in which the interests of justice can override the Plaintiff's interest. *See Mussetter Distrib., Inc.*, 2009 WL 1992356, at *6; *Doe v. Yale Univ.*, No. 215CV07263SVWAGR, 2015 WL 13917170, at *1 (C.D. Cal. Nov. 4, 2015); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" (quoting *Coffee v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)); Moore's Federal Practice, § 111.13[1][o][I] ("The fact that a related action is pending in the proposed transferee district is an important consideration that can override plaintiff's choice of forum because transfer of the second action will promote judicial economy and avoid the possibility of inconsistent results."). Indeed, "[t]he Supreme Court has "made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent.'" *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental Grain Co. v. The FBL–585*,

364 U.S. 19, 26 (1960)); *see also Jolly v. Purdue Pharma L.P.*, No. 05–CV–1452H, 2005 WL 2439197, at *5 (N.D. Cal. Oct. 19, 2010) ("The pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor."). Because there is already extensive litigation involving twenty-five consolidated cases in the Northern District—in which the claims, core facts, and parties involved substantially overlap with those at issue in the present case—the Court finds that transferring this action to the Northern District would serve judicial economy and the interests of justice by preventing duplicative litigation and conserving the parties' and the Court's time and energy.

The Court further concludes that the finding that transfer is in the interests of justice is not affected by the fact that Plaintiff is acting as counsel in one of the twenty-five consolidated cases currently pending in the Northern District. The Court agrees with Defendant that under the California Rules of Professional Conduct, any conflict Plaintiff has with the Plaintiff in the *Royce* action exists under Rule 1.7 regardless of whether the action is pending in this Court or in the Northern District. Additionally, a person representing themselves *pro se* is not *per* se conflicted from representing another non-adverse party in a representative capacity even in the same case—let alone in a consolidated case. *See Hammer v. City of Sun Valley*, No. 1:13-CV-211-EJL, 2019 WL 958360, at *1 (D. Idaho Feb. 26, 2019). Even assuming a conflict of interest would arise from the transfer itself, the undersigned finds that the interests of justice still outweigh any such "potential ethical dilemma." *See DivX, Inc. v. UMG Recordings, Inc.*, No. 07CV1753 DMS (BLM), 2008 WL 11509148, at *3 (S.D. Cal. Feb. 5, 2008) ("The Court declines to find that a potential ethical dilemma facing the parties' counsel in related cases outweighs the clear fact that litigating this matter in the context of the lawsuit currently pending in the Central District will lead to a more complete and efficient determination of the issues before this Court.").

In sum, the Court concludes that the convenience and justice inquiry favors transferring this case. While Plaintiff wishes to litigate in the Eastern District of California, on balance, the countervailing considerations substantially outweigh this factor. The differences between the consolidated actions in the Northern District of California and this case are not significant enough to outweigh the substantial judicial economy that transfer would accord. As Judge Hollander

9

stated in *Kukich*: "[T]here is no need to burden two courts with virtually identical lawsuits. Rather, this action should be heard by the court that is already familiar with the issues to conserve judicial resources and to prevent inconsistent rulings." *Kukich v. Electrolux Home Prods., Inc.*, No. CV ELH-16-3412, 2017 WL 345856, at *12 (D. Md. Jan. 24, 2017).

## IV.   CONCLUSION AND ORDER

Based upon the foregoing, the Defendant has met its burden of demonstrating the transfer is appropriate under 28 U.S.C. § 1404(a). *See Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979). Accordingly, the Court ORDERS that Defendant's motion to transfer venue to the Northern District of California (Doc. 4) is GRANTED.

IT IS SO ORDERED.

Dated:   **May 30, 2025**           /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE